### CHICAGO, M. & ST. P. RY. CO. v. SMITH et al.

(Circuit Court, D. South Dakota, S. D. August 9, 1901.)

1. CARRIERS—STATE REGULATION OF RATES—CONSTITUTIONALITY.

Where the business of a railroad company within a state is efficiently, economically, and honestly conducted, and its operating expenses are no greater than such management requires, and the net earnings of its lines within the state, above operating expenses, both from local and through

business, are less than half the amount required to pay the interest on the mortgage debt upon lines within the state, the local earnings at the same time being insufficient to pay half of the proportion of such interest justly chargeable thereon, a state regulation reducing the rates it is permitted to charge on local business, the effect of which will be to materially decrease its net earnings, is unreasonable and unjust and a violation of its constitutional rights.

2. SAME—PROFITS OF RAILROAD—FIXED CHARGES.

The interest upon a valid bonded debt of a railroad company, contracted in a careful, economical, and honest administration of its business, constitutes a fixed charge, which the company is entitled to earn before its net earnings above operating expenses can be considered as dividends, which are subject to regulation or reduction in the discretion of the legislature.

In Equity. Suit to enjoin the enforcement by defendants of a state regulation fixing rates of charge for the transportation of passengers and freight within the state. On final hearing.

George R. Peck and A. B. Kittredge, for complainant.

John L. Pyle, Atty. Gen., Thomas H. Null, and T. B. McMartin, for defendants.

CARLAND, District Judge. This cause was before the court on pleadings and proofs at a previous term of this court. The disposition then made of the cause was disapproved by the supreme court in Railway Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417. The mandate in that case required this court to refer the case to some competent master to report fully the facts, and to proceed upon such report as equity should require. As no exceptions have been filed to the master's report, the same stands confirmed, under rule 83. It only remains for this court to proceed upon the report as equity shall require.

In view of certain matters urged by counsel for defendants in argument, it is proper to state that this court can have no opinion upon the facts. Its duty is performed when a conclusion is drawn from the facts found which shall be consonant with equity. The master finds:

"The business of complainant has at all times been conducted efficiently, economically, and honestly, and the operating expenses have in no case been greater than such efficient, economic, and honest management required."

Such a finding must always be an important one in cases of this character. The master has taken the fiscal year ending June 30, 1897, being the year immediately preceding the filing of the bill, as a test year for showing the business of the complainant company. He finds that during said year the net local freight earnings were $70,-888.43; the net passenger earnings, $19,332.59; the net mail, express, etc., $35,709.08,—total net earnings, $125,930.10. He also finds that if the rates prescribed by the schedule adopted by defendants had been in force during the year aforesaid, the net local earnings of complainant would have been: Net freight earnings, $53,049.18; net passenger earnings, $26.34; net mail and express earnings, $35,-709.08,—total net local earnings, $88,784.60. These figures show a reduction in net earnings for the year 1897 of $37,145.50. It is also found that the lines of complainant in South Dakota are mortgaged to secure bonds amounting to the sum of $19,365,247.10, which bear

interest at an average rate of 5.69 per cent. per annum, and that the total amount of the annual interest charge upon said South Dakota indebtedness is $1,101,749.93; that the value of complainant's lines of railway, with the appurtenances and equipment, is the sum of $15,000,000. The master also finds that, had the rates prescribed by the defendants' schedule been in force in the year 1897, the total net earnings of complainant, both interstate and local, would have been $180,389.02, which would have left a deficiency in the amount due for interest on bonds of $921,360.91. If this fixed charge of interest is an expense which complainant has a right to earn before the state may reduce its earnings, it becomes important to ascertain how much of this interest should be borne by the local earnings. It is found that if the rates proposed by the defendants had been in force in 1897, the net earnings would have been $88,784.60, and that the total net earnings for the same year on interstate business would have been $91,604.42. There seems to be no good reason why interstate and local business should not be charged with the interest on the South Dakota indebtedness in proportion to the amount of annual net revenue produced by each. There is so little difference between the amount of the annual net local earnings and the annual net interstate earnings that for all practical purposes the local earnings should be charged with one-half of the annual fixed charge for interest, or, in round numbers, $550,874.96. Applying the net annual income from local business as shown in the year 1897, we have a deficiency on the interest account of $462,090.36. Again, if it be urged that in equity interest should not be figured, for the purposes of this case, on a sum in excess of the value of the property, which is $15,000,000, we have the following result: The interest on $15,000,000 at the average rate of 5.69 per cent. would be $778,500; one-half of it would be $389,250. Taking the annual net local revenue of $88,784.60 from this amount, and we have still a deficiency annually of $300,465.40. With this deficiency each year for fixed charges, are the rates prescribed by the proposed schedule unjust and unreasonable? The solution of this question depends upon the further question as to whether interest on an honest debt is a fixed charge, which the complainant has a right to earn before any reduction in its earnings may be compelled by the state. It is claimed by counsel for complainant that the case of Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, is decisive upon this point. It is true in that case, which was brought by a second mortgage bondholder, that one of the reasons assigned by the court for its judgment was the fact that for three years prior to the filing of the bill the earnings of the company, above operating expenses, had been insufficient to pay the interest on the bonded debt, and that the proposed tariff, as enforced, would so diminish the earnings that they would not pay one-half the interest on the bonded debt. Yet there are numerous other reasons assigned by the court for its judgment, and it cannot be said that the case was disposed of upon this one ground alone. But a careful consideration of all the rate cases decided by the supreme court compels the belief that it is the opinion of that court that, when the earnings of a railroad, conducted efficiently,

economically, and honestly, with operating expenses in no case greater than such efficient, economical, and honest management requires, are insufficient to pay one-half the interest on a valid debt, contracted, as found by the master in this case, in a careful, economical, and honest administration of the company's business, then a schedule of proposed rates which materially reduced these earnings would be unjust and unreasonable. It must be taken as true in this case that the debt, which is bearing an average rate of 5.69 per cent. per annum, is an honest debt. It is also true that if the interest is not paid upon the bonds which the mortgage secures the usual result is a receiver, and consequent loss of the road.

The argument of counsel for defendants, so far as it is confined to the facts found, is to this effect: The master finds that if the proposed rates had been in force in 1897, the local gross freight earnings would have been $84,449.98; that it would have cost the complainant, to earn this sum, $31,400.80, leaving a net revenue of $53,049.18 on local freight; that a profit of $53,049.18 at an expense of $31,400.80 is a large profit, and if there is any profit at all this court will not enjoin the defendants. This argument is plausible upon its face, but the view taken by counsel of these figures is too narrow. It leaves out of view the fact that the company has $15,000,000 invested in its South Dakota lines, and has an annual interest charge of $1,101,749.93 accruing on bonds secured by mortgage on these same lines. Experience has taught this court that there is nothing so deceiving in this class of cases as to take two or three items, and, by a system of percentages, seek to arrive at a just conclusion.

It is insisted by counsel for defendants that, as the findings of the master show a surplus over operating expenses of $53,049.18 during the year 1897; that this court will not interfere by injunction. This would be true, if this amount could be called "dividends"; but the difficulty in this case, so far as I am able to interpret the decisions of the supreme court of the United States, is that, so long as the net revenues of the company do not pay one-half the interest on the bonded debt, its net local earnings cannot, in the true sense of the word, be considered as dividends. I find by an examination of the case of Reagan v. Trust Co., supra, that the earnings of the railroad whose affairs were under investigation in that case left a surplus over operating expenses for the year 1889 of $858,732.24; for the year 1890, $498,177.24; for the year 1891, $555,091.59. The supreme court, in the face of these surplus earnings, granted an injunction, and assigned as one of the reasons that the earnings of the company were not sufficient to pay one-half of the interest on the bonded debt, so that the conclusion necessarily follows that in the opinion of the supreme court, if the earnings of a railroad company do not pay but a small proportion of the fixed charges, then these surplus earnings cannot, in a true sense, be considered as dividends.

I have carefully considered the remaining points urged by counsel for defendants in so far as they bear on the facts found in this case, and cannot see how they change the result which must inevitably follow the findings of the master. It is not necessary to decide in this case just how much a railroad may be permitted to earn before

the state can reduce its earnings. All that is decided is that, on the facts found by the master, equity requires that the defendants be perpetually enjoined from putting into effect the schedule of rates and fares complained of. The decree, however, will provide that the board of railroad commissioners of the state of South Dakota may hereafter, and when circumstances have changed so that the rates adopted, fixed, and established in the proposed schedule contained in the order of said board of August 26, 1897, shall yield to the said complainant a reasonable compensation for the services aforesaid, apply to this court, by supplemental bill or otherwise, as they may be advised, for a further order in that behalf.